Filing # 29763799 E-Filed 07/17/2015 08:33:12 AM

[xx] IN THE CIRCUIT COURT OF THE 17th JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
[ ] IN THE COUNTY COURT IN AND FOR BROWARD COUNTY, FLORIDA

| Division<br>[xx] Civil<br>[ ] Other | SUMMONS<br>20 DAY CORPORATE SERVICE | CASE NUMBER<br><br>CACE-15-012004 |
|---|---|---|
| PLAINTIFF(s)<br><br>PIONEER INTERNATIONAL<br>GROUP, INC., and<br>GEORGE ANAYA, JR. | vs. DEFENDANT(s)<br><br>WESTLUND FARMS, LLC,<br>ANDREW WESTLUND,<br>CYBERGY HOLDINGS, INC., and<br>MARK GRAY | CLOCK IN |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

You ARE COMMANDED to serve this Summons and a copy of the Complaint or Petition in this action on the following Defendant(s):

**CYBERGY HOLDINGS, INC. – 10333 E. Dry Creek Road, Suite 200, Englewood, CO 80112**

Each Defendant is required to serve written defenses to the Complaint or Petition of the following Plaintiff's Attorney:

**FRANK SMITH, ESQ. –** FMS Lawyer PL, 9900 Stirling Road, Suite 226, Cooper City, Florida 33024
Tel. 954-985-1400 - Fax. 954-241-6947 - frank.smith@fmslawyer.com

Within **Twenty (20) days** after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defense with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint or Petition

| HOWARD C. FORMAN<br>BROWARD COUNTY<br>CLERK OF COURTS | By:_____ | DATE<br><br>JUL 27 2015 |
|---|---|---|

<u>AMERICAN WITH DISABILITIES ACT OF 1990 - ADA NOTICE</u>

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Diana Sobel, Room 470, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

(COURT SEAL)

HOWARD C. FORMAN

DEFENDANT'S
EXHIBIT
1

Filing # 29504224 E-Filed 07/10/2015 12:56:19 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

I.    CASE STYLE

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

Case No.: CACE-15-012004
Judge: Sandra Perlman

George Anaya Jr, Pioneer International Group, Inc.
Plaintiff

vs.

Andrew Westlund, Westlund Farms, LLC, Mark Gray, Cybergy Holdings, Inc.
Defendant

II.    TYPE OF CASE

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability – commercial
  ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure $0 - $50,000
  ☐ Commercial foreclosure $50,001 - $249,999
  ☐ Commercial foreclosure $250,000 or more
  ☐ Homestead residential foreclosure $0 – 50,000
  ☐ Homestead residential foreclosure $50,001 - $249,999
  ☐ Homestead residential foreclosure $250,000 or more
  ☐ Non-homestead residential foreclosure $0 - $50,000
  ☐ Non-homestead residential foreclosure $50,001 - $249,999
  ☐ Non-homestead residential foreclosure $250,00 or more
  ☐ Other real property actions $0 - $50,000

☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
  ☐ Malpractice – business
  ☐ Malpractice – medical
  ☐ Malpractice – other professional
☐ Other
  ☐ Antitrust/Trade Regulation
  ☐ Business Transaction
  ☐ Circuit Civil - Not Applicable
  ☐ Constitutional challenge-statute or ordinance
  ☐ Constitutional challenge-proposed amendment
  ☐ Corporate Trusts
  ☐ Discrimination-employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

III.   REMEDIES SOUGHT (check all that apply):
    ☒ Monetary;
    ☐ Non-monetary
    ☐ Non-monetary declaratory or injunctive relief;
    ☐ Punitive

IV.   NUMBER OF CAUSES OF ACTION: (    )
(Specify)

    <u>9</u>

V.   IS THIS CASE A CLASS ACTION LAWSUIT?
    ☐ Yes
    ☒ No

VI.   HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
    ☒ No
    ☐ Yes — If "yes" list all related cases by name, case number and court:

VII.   IS JURY TRIAL DEMANDED IN COMPLAINT?
    ☐ Yes
    ☒ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Frank Martin Smith</u>    FL Bar No.: <u>69681</u>
    Attorney or party                               (Bar number, if attorney)

<u>Frank Martin Smith</u>  <u>07/10/2015</u>
    (Type or print name)                                Date

Filing # 29504224 E-Filed 07/10/2015 12:56:19 PM

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

PIONEER INTERNATIONAL
GROUP, INC., and,
GEORGE ANAYA, JR., individually,

CASE NO.   CACE-15-012004

        Plaintiffs,

v.

WESTLUND FARMS, LLC,
ANDREW WESTLUND, individually,
CYBERGY HOLDINGS, INC., and
MARK GRAY, individually,

        Defendants.

_____/

## VERIFIED COMPLAINT

      PIONEER INTERNATIONAL GROUP, INC., ("PIONEER") and GEORGE ANAYA, JR. ("ANAYA") (hereinafter, collectively PIONEER and ANAYA are known as "Plaintiffs") hereby file this, their Complaint and sue WESTLUND FARMS, LLC, ("WFLLC") ANDREW WESTLUND ("WESTLUND"), CYBERGY HOLDINGS, INC. ("CYBERGY"), and MARK GRAY ("GRAY"), (hereinafter, collectively, WFLLC, WESTLUND, CYBERGY and GRAY are known as "Defendants"), and state:

      1.    PIONEER is a Florida Profit Corporation, duly registered with a principal place of business in Broward County, Florida. PIONEER is beneficially owned by ANAYA.

      2.    ANAYA, is an individual, who is otherwise *sui juris* and who resides in Broward County, Florida.

      3.    WFLLC, is an Oregon Limited Liability Company whose principal place of business is Oregon.

      4.    WESTLUND is an individual, who is otherwise *sui juris* and who upon

information and belief resides in Oregon. WESTLUND is a Manager of WFLLC and a Director of CYBERGY.

    5.    CYBERGY is a Nevada Corporation with its principal place of business in Colorado. It is a publicly traded entity.

    6.    GRAY, is an individual, who is otherwise *sui juris* and who upon information and belief resides in Virginia. GRAY is Chairman and CEO of CYBERGY.

    7.    This action is brought in the county in which venue is proper pursuant to Chapter 47, Florida Statutes as the causes of action asserted herein arose in Broward County, Florida. In addition, the underlying written agreement provides for jurisdiction and venue in Broward County.

    8.    Fla. Stat. §48.193 provides long-arm jurisdiction as necessary due to damages accruing in Broward County as well as performance and delivery being required in Broward County. Any resulting injury of Defendants action is to citizens of Broward County.

    9.    Plaintiffs have had to hire undersigned counsel to bring this action and have agreed to pay a reasonable legal fee for the services of the undersigned.

    10.    All conditions precedent to the bringing of this action and the attaching of jurisdiction have been performed, waived or excused.

### General Facts

    11.    In or about September 2014, Mark Gray (who was the then President of Civergy, Inc.) solicited ANAYA by sending him an article regarding Mount Knowledge Holdings, Inc. acquiring Civergy, Inc. (This was a reverse merger and would result in the formation of CYBERGY).

    12.    GRAY thereafter provided a term sheet to ANAYA. A copy of the terms sheet,

which was labeled September 23, 2014 and was received by ANAYA on September 29, 2014 is attached hereto and made a part hereof as Exhibit "A." Discussions continued subsequent to Exhibit "A" being provided.

13.    On or about October 23, 2014, GRAY send to ANAYA a new term sheet about a large block of stock that could be purchased from an investor (Neil Goldman), which stock would come with unrestricted, registration rights. A copy of the new term sheet is attached hereto and made a part hereof as Exhibit "B."

14.    Over the next week, document drafts were discussed and circulated

15.    As of Approximately October 31, 2014, GRAY informed ANAYA that Neil Goldman, was to be replaced with WESTLUND.

16.    On or about November 4, 2014, GRAY introduces WESTLUND to ANAYA indicating WESTLUND is selling a block of 2,534,400 Preferred Shares (convertible into common shares at a ratio of 1:100), apparently acquired from Neil Goldman. WESTLUND and GRAY confirmed the details of the offer to ANAYA.

17.    New documents were negotiated and drafted until on November 7, 2014, a Stock Purchase Agreement was entered into between PIONEER and WFLLC. A copy of the Stock Purchase Agreement is attached hereto and made a part hereof as Exhibit "C."

18.    Payments under Exhibit "C" in the total amount of $145,000.00, were made as follows:

    a.   November 12, 2015 - $23,750.00

    b.   November 19, 2014 - $22,500.00

    c.   December 30, 2014 - $98,725.00

19.    Over the next few months, PIONEER and ANAYA, in reliance on EXHIBIT "C,"

and the representations of WESTLUND and GRAY, did offer to resell the subject shares of stock to third parties.

20.    Into April 2015, despite the above payments, the subject shares of CYBERGY had not been issued. The third parties referenced in paragraph 19 above, started to threaten ANAYA and PIONEER that if they did not receive the shares they were promised.

21.    During the latter part of April 2015, ANAYA (who fortunately had previously held his own shares of Civergy, Inc.), used his own shares to satisfy the third parties referenced in paragraph 19 above, to mitigate any damages. ANAYA was able to satisfy most of the complaining third parties.

22.    In May, for the first time in months, GRAY emailed ANAYA regarding information surrounding the S1 registration of CYBERGY.

23.    ANAYA was informed by GRAY that the subject shares from WFLLC would be registered in the S1. The prior PIONEER shares used by ANAYA to satisfy third parties would be subject to Rule 144 (and would not be registered).

24.    On May 13, 2015, PIONEER demanded a return of the $145,000.00. A copy of the demand letter is attached hereto and made a part hereof as Exhibit "D."

25.    Upon information and belief, the S1 was filed on May 15, 2015. The subject WFLLC shares had not been issued to PIONEER and it is unclear whether they are registered as part of the S1 or not.

26.    PIONEER has not received it funds as demanded. Further, CYBERGY suddenly seems interested in issuing the subject shares, albeit at a tremendous loss to ANAYA and PIONEER as the stock price has substantially depreciated from the time the shares should have been issued.

27.     To the extent that GRAY and/or WESTLUND made representations to ANAYA or PIONEER (or omitted material facts from their discussions with ANAYA or PIONEER), or where GRAY and/or WESTLUND committed a tortious act (whether or not in the scope of their employment with WFLLC or CYBERGY), such representations, omissions or tortious acts damaging GRAY and/or WESTLUND, GRAY and/or WESTLUND are personally liable for such damages to ANAYA or PIONEER, jointly and severally with WFLLC and CYBERGY.

## COUNT I – BREACH OF WRITTEN CONTRACT – WFLLC

28.     PIONEER repeats, reiterates and realleges the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29.     Exhibit "C" is a written contract between PIONEER and WFLLC.

30.     WFLLC breached the contract by failing to timely issue the subject shares.

31.     PIONEER has been damaged by the actions of WFLLC in an amount in excess of $15,000.00.

WHEREFORE, PIONEER demands judgment against WFLLC for damages in excess of $15,000.00, together with attorney fees as provided for in the Agreement, costs and interest, and such other, further, and different relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT II – BREACH OF FLA. STAT., CHAPTER 517 – ALL DEFENDANTS

32.     Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

33.     This is an action by Plaintiffs against all Defendants under Chapter 517, Florida Statutes.

34.     Defendants, collectively did sell or offer to sell securities to Plaintiffs. The

securities were the shares ultimately embodied in Exhibit "C."

35.    Certain representations as to nature of the shares, the timing of issuance of the shares, and the relationship between the shares and the S1 of CYBERGY, were made to Plaintiffs in conjunction with the offer to sell or the sale of securities.

36.    Ultimately, Plaintiffs did not receive what they were offered, Plaintiffs lost monies and now CYBERGY stock has experienced a massive devaluation.

37.    With specificity, Defendants made representations (or verified the representations of the other Defendants) to Plaintiffs, (or omitted material facts from their representations), which include, but are not limited to, the following:

    a.    Preferred shares of Civergy, Inc. were offered for sale, which shares could be purchased at $1.00 per share;

    b.    The shares would convert at 100:1;

    c.    The shares were preferred;

    d.    The shares would be available immediately;

    e.    The shares would be registered as part of the S1 of CYBERGY; and,

    f.    The shares would be unrestricted.

38.    Plaintiffs relied upon the representations of Defendants and paid the sum of $145,000.00.

39.    Plaintiffs now have neither their money, nor any securities.

40.    The actions of Defendants are in violation of Florida Statutes, §517.301.

41.    Plaintiffs are entitled to damages and relief as provided for in Florida Statutes §517.211 and §517.312, for any and all damages directly or indirectly related to Defendants' violation of Florida Statutes, §517.301.

42.    Plaintiffs are entitled to reasonable attorneys' fees for which Defendants are liable pursuant to §517.211(6).

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, for damages in excess of $15,000.00, in accordance with Florida Statutes §517.211 and §517.312 together with costs and interest, and such other, further, and different relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT III – FRAUDULENT MISREPRESENTATION – ALL DEFENDANTS

43.    Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 and 37 as if fully set forth herein.

44.    Plaintiffs sue Defendants for damages in excess of $15,000.00, exclusive of costs and interest, for fraudulent misrepresentation.

45.    GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, intentionally made false statements to Plaintiffs as set forth above, or intentionally omitted relevant facts from their statements regarding the deal between the parties, the securities sales and the status of CYBERGY.

46.    GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, made representations to Plaintiffs (or omitted material facts from their representations), which include, but are not limited to those set forth in paragraph 37 above.

47.    GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, knew or should have known that their statements were false when they made them or knowingly omitted to tell the truth when they should have done so.

48.    GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, made the statements or omissions intending that Plaintiffs would rely

on the false statements or omissions.

49.     Plaintiffs did rely upon the statements or omissions of GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY and have been damaged thereby.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages in excess of $15,000.00, together with costs and interest, and such other, further, and different relief, as the Court may deem just, proper and equitable under the circumstances. Further, Plaintiffs reserve the right to amend to assert punitive damages upon a proper showing to the Court.

## COUNT IV – NEGLIGENT MISREPRESENTATION – ALL DEFENDANTS

50.     Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 and 37 as if fully set forth herein.

51.     Plaintiffs sue Defendants for damages in excess of $15,000.00, exclusive of costs and interest, for negligent misrepresentation.

52.     GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, made statements to Plaintiffs as set forth above, or intentionally omitted relevant facts from their statements regarding the deal between the parties, the securities sales and the status of CYBERGY, which statements Defendants may have believed were true at the time, but which statements were in fact false.

53.     GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, made representations to Plaintiffs (or omitted material facts from their representations), which include, but are not limited to those set forth in paragraph 37 above.

54.     GRAY and WESTLUND, individually and in their capacity as representatives of

WFLLC and CYBERGY, were negligent in making their statements because they should have known they were false when they made them.

55.   GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY, made the statements or omissions intending that Plaintiffs would rely on the false statements or omissions.

56.   Plaintiffs did rely upon the statements or omissions of GRAY and WESTLUND, individually and in their capacity as representatives of WFLLC and CYBERGY and have been damaged thereby.

HEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for damages in excess of $15,000.00, together with costs and interest, and such other, further, and different relief, as the Court may deem just, proper and equitable under the circumstances.

## COUNT V – CONVERSION – ALL DEFENDANTS

57.   Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

58.   Plaintiffs sue Defendants for damages in excess of $15,000.00, exclusive of costs and interest, for conversion.

59.   In accordance with the facts as set forth above, Defendants converted the $145,000.00 belonging to Plaintiffs to their own use.  It is unclear to Plaintiff, which Defendant actually wound up with the funds.

60.   Plaintiffs were accordingly damaged in the amount of $145,000.00.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, for damages in excess of $15,000.00, together with costs and interest, and such other, further, and different relief, as the Court may deem just, proper and equitable under the circumstances.

## COUNT VI – CIVIL THEFT – ALL DEFENDANTS

61.    Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

62.    Plaintiffs sue Defendants for damages in excess of $15,000.00, exclusive of costs and interest, for civil theft under Fla. Stat. §772.11.

63.    In accordance with the facts as set forth above, Defendants, committed a theft of the $145,000.00 belonging to Plaintiffs as defined in Fla. Stat. §812.014.

64.    Plaintiffs were accordingly damaged in the amount of $145,000.00.

65.    In accordance with Fla. Stat. §772.11, Plaintiffs are entitled to threefold the actual damages sustained and reasonable attorney's fees and court costs in the trial and appellate courts; Plaintiffs are accordingly entitled to $435,000.00 plus costs and attorneys' fees.

66.    In accordance with Fla. Stat. §772.11, Plaintiffs provided Defendants with the condition precedent written demand.  See copy of demand attached hereto and made a part hereof as a portion of Exhibit "E."

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, for damages in accordance with Fla. Stat. §772.11, together with costs, attorneys' fees and interest, and such other, further, and different relief as the Court may deem just, proper and equitable under the circumstances.

## COUNT VII - CONTRACT IMPLIED IN LAW – ALL DEFENDANTS

67.    Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

68.    Plaintiffs conferred a benefit on Defendants in the form of the sum of $145,000.00.

69.     Defendants accepted and retained the benefits conferred by Plaintiffs.

70.     The circumstances are such that it would be inequitable for Defendants to retain benefit without paying fair value for it.

WHEREFORE, Plaintiffs demands judgment against Defendants, jointly and severally, for damages in excess of $15,000.00, together with costs and interest, and such other, further, and different relief, as the Court may deem just, proper and equitable under the circumstances.

## COUNT VIII – ACCOUNTING - ALL DEFENDANTS

71.     Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

72.     Plaintiffs sue all Defendants for an accounting.

73.     The issues between the litigants involve extensive or complicated accounts and it is not clear that the remedy at law is full, adequate and expeditions in its equity.

74.     To the extent the Defendants have received any compensation or other money or other benefit from each other which could otherwise reflect the $145,000.00, Plaintiffs are entitled to an accounting of all monies and benefits received by the Defendants from each other

75.     Even if a remedy at law exists as to some Defendants in the form of a money judgment, an accounting is proper where such other Defendants control the records and additionally owe a fiduciary responsibility to Plaintiffs, as they certainly had in this case.

76.     Accordingly, Plaintiffs are entitled to an accounting from all Defendants.

77.     Plaintiffs are entitled to its reasonable attorneys' fees for which Defendants are liable under common law equitable principals regarding seeking an accounting.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, for an accounting, together with costs, interest, attorneys' fees and such other, further, and

different relief, as the Court may deem just, proper and equitable under the circumstances.

## COUNT IX - CLAIM FOR CIVIL CONSPIRACY - ALL DEFENDANTS

78.    Plaintiffs repeat, reiterate and reallege the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

79.    Plaintiffs sue all Defendants for Civil Conspiracy.

80.    Based upon the facts set forth herein, Plaintiffs allege there was an agreement between the Defendants to essentially obtain the $145,000.00 from Plaintiffs and thereafter enter into agreements with each other to the detriment and exclusion of SCLLC.

81.    As set forth above, there occurred at least one (1), if not several overt acts in pursuance of the conspiracy by the Defendants.

82.    Plaintiffs have been damaged as a result of the acts done under the conspiracy

**WHEREFORE**, Plaintiffs demand judgment against all Defendants finding a civil conspiracy, causing all Defendants to be jointly and severally liable for all damages under this Complaint, and for such other, further, and different relief, as the Court may deem just, proper and equitable under the circumstances.

Dated:  July 10, 2015

## VERIFICATION

VERIFICATION OF COMPLAINT, DATED JULY 10, 2015

By: _____

George Anaya, Jr.

STATE OF FLORIDA          )
                          ) ss.:
COUNTY OF BROWARD          )

BEFORE ME, the undersigned authority, personally appeared George Anaya, Jr. as an individual and on behalf of Pioneer International Group, Inc., who was sworn and says the foregoing allegations are true and correct by his own personal knowledge, as set forth in the Complaint dated July 10, 2015, a copy of which is submitted herewith.

SUBSCRIBED and SWORN TO on this 10ᵗʰ day of July 2015 by George Anaya, Jr.

Personally Known _____ OR Produced Identification _____

Type of Identification Produced ___ FL. Dr. Lic. ___

_____
Notary Public       Spencer Benevisto
State of Florida
My Commission Expires: 1/8/2019

SPENCER BENEVISTO
MY COMMISSION # FF 168144
EXPIRES: January 8, 2019
Bonded Thru Notary Public Underwriters

Page 13 of 14

## DESIGNATION OF EMAIL ADDRESSES

Pursuant to Rule 2.516 of the Florida Rules of Judicial Administration, the undersigned hereby designates the following emails for service of all pleadings and papers in this action:

Primary email address -- Frank Smith, Esq. -- frank.smith@fmslawyer.com

Secondary email address -- Ruth Smith, Esq. -- ruth.smith@fmslawyer.com

Respectfully submitted,

Frank Smith, Esq.
FMS Lawyer PL
9900 Stirling Road, Suite 226
Cooper City, Florida 33024
Tel. 954-985-1400
Fax. 954-241-6947

_____/s/_____
FRANK SMITH, Esq.
Fla. Bar. No. 0069681

EXHIBIT A

## TERM SHEET

This term sheet is confidential, and none of its provisions or terms shall be disclosed to anyone other than an officer or director of CIVERGY or its agent, adviser or legal counsel, unless required by law without the prior written consent of the parties. Except for the confidentiality provision, this letter is non binding and subject to the parties entering into formal agreements setting forth their respective rights and obligations. Such agreements will contain customary representations, warranties and indemnifications. The material terms of the offering are set forth below:

**Issuer:** Civergy, Inc. (and together with its subsidiaries and affiliates, Bion, New West Technologies and others, the "Company")

**Investor:** A previous investor invested $1,000,000 on these terms and a number of Qualified Investors are being sought subject to approval by the Company (each, an "Investor"). Any investor who purchases more than $500,000 in the Offering will be deemed the Lead Investor.

**Securities:** Senior Secured Convertible Debenture subordinated to the receivable line of credit or any replacement therefor (the "Debenture") convertible to Common Stock, as set forth in the Securities Purchase Agreement (the "Securities Purchase Agreement").

**Amount:** up to $3,000,000, $1,000,000 of which has already been invested.

**Closing Date:** The date of execution of the Securities Purchase Agreement and related Transaction Documents set forth therein. There will be one closing for the Offering which will be upon the execution of a definitive agreement to merge with Mount Knowledge Holdings, Inc.

**Interest Rate:** 5% per annum (paid Semi-Annually)

**Maturity Date:** 18 months from the Closing Date.

**No Prepayment:** The Company may not prepay the Debenture without the prior written consent of the Investor.

**Issue Price:** The Investors shall purchase the debenture at 100% of Par Value

**Optional Conversion:** At the option of the Investors, the $3,000,000 of Debentures may be converted into shares of the Company's common stock ("Conversion Shares") at any time prior to Maturity Date, at a price per share equal to 15% of all outstanding pre-merger equity of Civergy.

**Mandatory Conversion:** The Debenture shall be converted into common stock at the option of the Company at any time after (a) the Company has filed a registration statement with the SEC and such registration statement has been declared effective and (b) the Company has consummated a subsequent financing resulting in gross proceeds of at least $5,000,000.

**Lock-Up Condition:** All officers, creditors, and major shareholders with greater than 5% of the Company shall be prevented from selling any shares commencing on the initial closing date and ending on the earlier date of (i) the full repayment or conversion of the Debenture or (ii) 12 months after the effectiveness of the Registration Statement.

**Public Company:** The Company shall enter into a definitive agreement for a merger with Mount Knowledge Holdings, Inc. concurrently with the closing of this financing.

**Registration:** The Company shall file a Registration Statement to register the Common Stock and the common stock underlying the Debentures within 90 days of the completion of the "merger" transaction and make its best efforts to have the registration declared effective at the earliest date. The Company will maintain the effectiveness of the Registration Statement until all securities registered under the Registration Statement may be sold under Rule 144 without volume or other limitations. If the Registration Statement is not filed within the foregoing time period or declared effective within 180 days of the Closing Date, then the Company will pay the Investors liquidating damages equal to 1% per month of the face value of the Debentures issued with a maximum penalty of 18%, until such time when the registration is declared effective.

**Anti-Dilution Protection:**   At the class Leader's election, the class may exercise one of the below:

(i)   **Weighted Average Ratchet:** If the Company consummates an equity or equity-linked private financing (each, a "Subsequent Financing") at any time during the term of the Debenture, the Conversion Price of the Debentures will be adjusted on a weighted average basis as set forth in the Debenture.

(ii)   **Most Favored Nations:** If the Company consummates an equity or equity-linked private financing (each, a "Subsequent Financing") at any time during the term of the Debenture, the Investors may exchange any outstanding Debentures, on a $1 for $1 basis based upon the principal amount of the Debentures being exchanged plus any accrued and unpaid interest, for the securities in the Subsequent Financing.  The Company shall notify the Investors of such Subsequent Financing and the Investor shall have 20 days to elect to exchange the Debenture into the terms of the Equity Financing.

**Equity Kicker:** Common stock convertible into 15% of all outstanding pre-merger equity of Civergy, for the full $3,000,000 offering.

**Change of Control:** In the event of a "Change of Control" transaction consisting of either (i) a third party acquiring greater than 50% in voting rights in one or a series of related transactions, (ii) a transaction in which the shares of the common stock shall be changed into securities of another entity, (iii) the sale or transfer of more than 40% in aggregate of the properties or assets of the Company to another Person or Persons in any rolling 12 month period (an "Asset Sale"), or (iv) a purchase, tender or exchange offer made to and accepted by the holders of more than the 50% of the outstanding shares of Common Stock, the Investors may elect to have the Debenture redeemed by the Company at a price equal to 125% of the principal amount being redeemed plus any accrued and unpaid interest.

**Board Seat:** For so long as at least 50% of the Debentures offered in this $2,000,000 round remain outstanding or an equity position in the company of at least 5% is maintained, the Lead Investor may designate one member of the Company's Board of Directors.

**Default Consequences:** Upon any event of default, the Investors have the right to liquidate the collateral and redeem the entire outstanding principal of the Debentures together with all accrued and unpaid interest. Until such time as the event of default has been cured in its entirety, the interest rate will be increased to an 18% per annum.

**Use of Proceeds:** General working capital purposes.

**Transfer Restriction:** The Debentures and Common Stock may not be sold, pledged or otherwise transferred by the Investors without the prior written consent of the Company, which will not be unreasonably withheld.

**Expenses:** The Company will bear all of the expenses in connection with this transaction, including but not limited to the reasonable legal (not to exceed $25,000 of which $20,000 has been previously paid), due diligence and documentation expenses of the Investors.

**Due Diligence:** The completion of the transaction described in this agreement shall be subject to the Lead Investor's satisfaction with the results of its due diligence investigation in its sole discretion.

**Expiration:** This term sheet will expire if not executed by all parties on or before September 30, 2014.

**Negative Covenants:** Neither the Company nor its subsidiaries may incur additional debt in excess of $100,000, issue any shares, amend its charter or bylaws, enter into a merger or sell substantially all of its assets, pledge assets, provide any security interests on its assets and/or guarantee any other debt, except with Mount Knowledge Holdings, Inc.'s consent and as it relates to the agreed upon debt facility or an alternative debt facility for so long as the Debenture remains outstanding, without the prior written consent of the majority of the Debentures held by the Investors, which will not be unreasonably withheld.

**Ranking:** The Debentures will be senior to all other present or future liabilities of the Company other than the current receivable financing line of credit or an alternative debt facility.

**Security Interest:** The Investors shall receive a first priority security interest in all of the assets of the Company, including but not limited to all of its receivables, intellectual property, real estate, property and equipment. Assets acquired after this financing, IP and other non-tangible assets of the Company and shall be junior only to the liens of the one pre-approved Senior Revolver Lender (a copy of such agreement will be provided and not altered without the pre-approval of the Investors). The Company shall also obtain key-person life insurance on selected management members (to be determined) with Lender named as loss payee.

**Information Rights:** The Company will deliver to the Investors annual audited and quarterly unaudited financial statements, annual budgets and other information reasonably requested by such investors.

**Right of First Refusal:** In the event the Company proposes to offer equity or equity-like securities to any person (other than an underwritten public offering), the Investors shall have the right to purchase their pro rata portion of such shares.

**Confidentiality:** The parties hereto (including their directors, partners, officers, employees and agents) agree to retain in confidentially information contained herein and any information transmitted between the parties pursuant to it, and further agree that they will not use for their own benefit and will not use or disclose to any third party of, any information obtained from or revealed by the Company.

**Severability:** If any provision of this term sheet is invalid or unenforceable for any reason, such provision will be construed to have been adjusted to the minimum extent necessary to cure such invalidity or unenforceability. The invalidity or unenforceability of one or more of the provisions contained herein will not have the effect of rendering any other provisions of this term sheet invalid or unenforceable whatsoever.

**Governing Law:** The definitive transaction documents will be governed by the laws of the state of New York, without regard to the principles of conflict of laws thereof.

If this terms sheet correctly expresses our mutual intentions, please execute and return to the undersigned.

By: _____
        Name:

ACCEPTED AND AGREED TO: as of _____, 2014

Civergy, Inc.

By: _____
        Name: Mark Gray
        Title:   President and Chief Executive Officer

EXHIBIT B

TERM SHEET

*This term sheet is confidential, and none of its provisions or terms shall be disclosed to anyone other than pursuant to a confidentiality agreement. Except for the confidentiality provision, this letter is non binding and subject to the parties entering into formal agreements setting forth their respective rights and obligations. Such agreements will contain customary representations, warranties and indemnifications. The material terms of the offering are set forth below:*

Seller:   This is a private stock resale by the beneficial owner of the Securities. The sale is being made by an individual (hereinafter, "Seller").

Buyer:   One or more suitable and accredited Buyer(s) of the Securities (the "Buyer").

Securities:   The securities include:   2,534,400 shares of Class C preferred stock of Mount Knowledge Holdings, Inc. which is the owner of 100% of Civergy, Inc. and which is listed company -- OTCQB: MKHD (hereafter referred to as "MKHD").   Said shares of Class C preferred stock are convertible at a rate of 1 share of preferred for 100 shares of common stock of MKHD, such that the 2,534,400 shares of MKHD preferred are convertible into 253,440,000 shares of common stock of MKHD.

Amount:   up to   2,534,400 shares of Class C preferred shares of MKHD.

Closing Date:   Expected within 10 days after the signing of this term sheet by the Company and the Investor.

Approval :   The sale or transfer must be approved by the Company

Sale Price:   The Buyer shall purchase the Class C Preferred Shares at $1.00 (One Dollar) per preferred share.

Optional Conversion:   At the option of the Buyer, the Preferred Shares may be converted into shares of the Company's common stock ("Conversion Shares") at any time, once the registration statement becomes effective, at a rate of 1 for 100, representing a purchase price of the underlying Common Shares for $0.01 (One Cent) per share of Common Stock..

Lock-Up Condition:   No lock-up provision.

Registration:   The Company shall file a Registration Statement to register the Common Stock underlying the Preferred Shares within 60 days of the completion of the "merger" transaction between Civergy, Inc. and Mount Knowledge Holdings, Inc. and make its best efforts to have the registration declared effective at the earliest date. The Company will maintain the effectiveness of the Registration Statement until all securities registered under the Registration Statement may be sold under Rule 144 without volume or other limitations.

Expenses:   Each Party, the Buyer and Seller will bear all of the expenses in connection with this transaction, including but not limited to the legal closing costs, due diligence and documentation expenses related to the sale of the Securities..

Due Diligence:  The completion of the transaction described in this agreement shall be subject to the Investor's satisfaction with the results of its due diligence investigation in its sole discretion.

Expiration:        This term sheet will expire if not executed by all parties on or before _____, 2014.

Right of First Refusal:    In the event the Seller receives another to purchase the Securities, the Buyer shall have the first right of refusal to purchase the Securities during the Term.

Confidentiality:    The parties hereto (including their partners, officers, employees and agents) agree to retain in confidentially information contained herein and any information transmitted between the parties pursuant to it, and further agree that they will not use for their own benefit and will not use or disclose to any third party of, any information obtained from or revealed by the Company.

Severability:      If any provision of this term sheet is invalid or unenforceable for any reason, such provision will be construed to have been adjusted to the minimum extent necessary to cure such invalidity or unenforceability. The invalidity or unenforceability of one or more of the provisions contained herein will not have the effect of rendering any other provisions of this term sheet invalid or unenforceable whatsoever.

Governing Law: The definitive transaction documents will be governed by the laws of the state of New York, without regard to the principles of conflict of laws thereof.

If this terms sheet correctly expresses our mutual intentions, please execute and return to the undersigned.

For Seller:

By: _____

Name: _____

ACCEPTED AND AGREED TO: as of _____, 2014

For Buyer:

By: _____

Name: _____

ACCEPTED AND AGREED TO: as of _____, 2014

EXHIBIT C

# STOCK PURCHASE AGREEMENT

THE SECURITIES OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION(S) FROM THE REGISTRATION REQUIREMENTS OF SAID ACT AND SUCH LAWS

STOCK PURCHASE AGREEMENT (this "Agreement") made as of the last date set forth on the signature page hereof between Westlund Farms, LLC, an Oregon limited liability company (the "Seller"), and Pioneer International Group, Inc., a Florida corporation (the "Purchaser").

## WITNESSETH:

WHEREAS, Mount Knowledge Holdings, Inc. (the "Parent"), entered into an Agreement and Plan of Merger (the "Merger Agreement") on September 30, 2014 with MK Merger Acquisition Sub, Inc., a wholly owned subsidiary of Parent ("Merger Sub"), Access Alternative Group S.A., and Civergy, Inc. (the "Company"), providing for the merger of Merger Sub with and into the Company (the "Merger"), with the Company surviving the Merger as a wholly owned subsidiary of Parent.; and

WHEREAS, as a result of the Merger, the Seller owns shares of Series C Preferred Stock of the Parent (the "Preferred Stock") and the Preferred Stock may then be converted into common stock (the "Common Stock") at a rate of 100 shares of Common Stock per share of Preferred Stock as provided for in the Certificate of Designation attached hereto as Exhibit "A" of this Agreement; and

WHEREAS, the Purchaser has a right but not the obligation to purchase up to $1,000,000 worth of Seller's Preferred Stock in either one or multiple closings and purchase price shall be $1 per Preferred Stock share as such number will be provided for by Purchaser (the "Purchase Price"); and

NOW, THEREFORE, in consideration of the premises and the mutual representations and covenants hereinafter set forth, the parties hereto do hereby agree as follows:

I.   CLOSING

1.1     Upon execution of this Agreement, Purchaser shall deliver via wire transfer, immediately available funds equal to its Purchase Amount on the business day when all of the documents have been executed and delivered by the applicable parties thereto, and all conditions precedent to (i) the Purchasers' obligations to pay the Principle Amount and (ii) the Seller's obligations to deliver the securities have been satisfied or waived (the, "Closing") the date of the Closing is the "Closing Date".

Upon the terms and subject to the conditions set forth herein, substantially concurrent with the execution and delivery of this Agreement by the parties hereto, the Sellers agrees to sell,

1

and the Purchasers, severally and not jointly, agree to purchase, up to an aggregate of $2,534,400.00 in principal amount of the Preferred Stock. The Seller and each Purchaser shall deliver the other items set forth in Section 1.3 deliverable at the Closing. Upon satisfaction of the conditions set forth in Section 1.2 and Section 1.3, the Closing shall occur at the offices of Justin E. Spiller, Esq., or such other location as the parties shall mutually agree. The Seller and Purchaser may conduct multiple closings for the sale of the Preferred Stock until it has received an aggregate principal amount of $1,000,000.00 cash consideration. The initial Closing Date shall be at the opening of business on November 7, 2014.

    1.2    Deliveries.

    (a)    On or prior to the Closing Date, the Seller shall deliver or cause to be delivered to Purchaser the following:

    (i)    this Agreement executed by the Seller;
    (ii)    a certificate with a principal amount equal to the Purchaser's Principal Amount, registered in the name of such Purchaser;
    (b)    On the Closing Date, Purchaser shall deliver or cause to be delivered to the Seller the following:
    (i)    this Agreement executed by Purchaser; and
    (ii)    such Purchaser's Principle Amount by wire transfer.

    1.3    Closing Conditions.

    (a)    The obligations of the Seller hereunder in connection with the Closing are subject to the following conditions being met:
    (i)    the accuracy in all material respects on the Closing Date of the representations and warranties of the Purchasers contained herein;
    (ii)    all obligations, covenants and agreements of Purchaser required to be performed at or prior to the Closing Date shall have been performed; and
    (iii)    the delivery by Purchaser of the items set forth in Section 2.2(b) of this Agreement.
    (b)    The respective obligations of the Purchasers hereunder in connection with the Closing are subject to the following conditions being met:
    (i)    the accuracy in all material respects when made and on the Closing Date of the representations and warranties of the Seller contained herein;
    (ii)    all obligations, covenants and agreements of the Seller required to be performed at or prior to the Closing Date shall have been performed;
    (iii)    the delivery by the Seller of the items set forth in Section 2.2(a) of this Agreement;

II.    WARRANTS AND REPRESENTATIONS BY PURCHASER

    2.1    Subject to the terms and conditions hereinafter set forth, the Purchaser hereby irrevocably agrees to purchase from the Seller the Preferred Stock for the aggregate amount indicated on the signature page of this Agreement (the "Principal Amount"). The Principal Amount is payable by wire transfer by the Purchaser to the Escrow Agent as described in that certain Escrow Agreement dated of even date herewith. .

2

2.2     The Purchaser recognizes that the purchase of the Preferred Stock involves a high degree of risk and that the Purchaser is able to bear the economic risk of an investment in the Preferred Stock. The Purchaser has knowledge and experience in business and financial matters such that the Purchaser is a sophisticated investor capable of evaluating the merits and risks of the prospective investment.

2.3     The Purchaser is an "accredited investor" as such term is defined in Rule 501 of Regulation D ("Regulation D") promulgated under the Securities Act, as indicated by the Purchaser's Confidential Investor Questionnaire attached hereto. Seller may rely on the accuracy of the Purchaser's representations therein.

2.4     The Purchaser hereby acknowledges that the Offering has not been registered or otherwise reviewed by the United States Securities and Exchange Commission (the "SEC") nor any state regulatory authority. The Offering is exempt from the registration requirements of Section 5 of the Securities Act, under 4(1) of the Securities Act and Rule 506 of Regulation D. The Purchaser understands that the Preferred Stock has not yet been transferred to common stock and has not been registered under the Securities Act or under any state securities or "blue sky" laws and agrees not to sell, pledge, assign or otherwise transfer or dispose of the shares of Preferred Stock unless they are converted to common stock and they are registered under applicable law or exempted from registration..

2.5     The Purchaser, if an entity, represents that it was not formed for the purpose of purchasing the Preferred Stock.

2.6     The Purchaser consents to the placement of a legend on any certificate or other document evidencing the Preferred Stock or upon conversion the common stock that such shares of Preferred Stock or upon conversion the common stock have not been registered under the Securities Act or any state securities or "blue sky" laws and setting forth or referring to the restrictions on transferability and sale thereof contained in this Agreement or by law. The Purchaser is aware that the Seller will make a notation in its appropriate records with respect to the restrictions on the transferability of such Preferred Stock or upon conversion the common stock. In addition to any legend pursuant to Article III, the legend to be placed on each certificate of Preferred Stock or upon conversion the common stock shall be in form substantially similar to the following:

> "The securities represented by this certificate have not been registered under the Securities Act of 1933, as amended and may not be sold, transferred, pledged, hypothecated or otherwise disposed of in the absence of (i) an effective registration statement for such securities under said act or (ii) an opinion of Seller counsel that such registration is not required."

2.7     The Purchaser hereby represents that the address of the Purchaser furnished by Purchaser on the signature page hereof is the Purchaser's principal residence if Purchaser is an individual or its principal business address if it is a corporation or other entity.

2.8     The Purchaser represents that the Purchaser has full power and authority (corporate, statutory and otherwise) to execute and deliver this Agreement and to purchase the

3

Preferred Stock. This Agreement constitutes the legal, valid and binding obligation of the Purchaser, enforceable against the Purchaser in accordance with its terms.

2.9     If the Purchaser is a corporation, partnership, limited liability Seller, trust, employee benefit plan, individual retirement account, Keogh Plan, or other tax-exempt entity, it is authorized and qualified to invest in the Company and the person signing this Agreement on behalf of such entity has been duly authorized by such entity to do so.

2.10    The Purchaser acknowledges that if he or she is a Registered Representative of an FINRA member firm, he or she must give such firm the notice required by the FINRA's Rules of Fair Practice, receipt of which must be acknowledged by such firm in Section 5.2 below.

2.11    The Purchaser agrees not to issue any public statement with respect to the Purchaser's investment or proposed investment in the Seller or the terms of any agreement or covenant between them and the Seller without the Seller's prior written consent, except such disclosures as may be required under applicable law or under any applicable order, rule or regulation.

2.12    The Purchaser agrees to hold the Seller and its directors, officers, employees, affiliates, controlling persons and agents and their respective heirs, representatives, successors and assigns harmless and to indemnify them against all liabilities, costs and expenses incurred by them as a result of (a) any sale or distribution of the Preferred Stock or upon conversion the common stock by the Purchaser in violation of the Securities Act or any applicable state securities or "blue sky" laws; or (b) any false representation or warranty or any breach or failure by the Purchaser to comply with any covenant made by the Purchaser in this Agreement (including the Confidential Investor Questionnaire contained in Article V herein) or any other document furnished by the Purchaser to any of the foregoing in connection with this transaction.

III.    NOTICES

3.1     Any notice or other communication given hereunder shall be deemed sufficient if in writing and sent by registered or certified mail, return receipt requested, or delivered by hand against written receipt therefor, addressed as follows:

If to the Seller, to it at:          With a copy to (which shall not constitute notice):

Westlund Farms, LLC
41154 Ridge Dr.
Scio Oregon 97374
Attn: Andrew Westlund

If to the Purchaser, to the Purchaser's address indicated on the signature page of this Agreement.

Notices shall be deemed to have been given or delivered on the date of mailing, except notices of change of address, which shall be deemed to have been given or delivered when received.

4

IV.   MISCELLANEOUS

4.1    Except as otherwise provided herein, this Agreement shall not be changed, modified or amended except by a writing signed by the parties to be charged, and this Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the party to be charged.

4.2    This Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, legal representatives, successors and assigns. This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and merges and supersedes all prior discussions, agreements and understandings of any and every nature among them.

4.3    NOTWITHSTANDING THE PLACE WHERE THIS AGREEMENT MAY BE EXECUTED BY ANY OF THE PARTIES HERETO, THE PARTIES EXPRESSLY AGREE THAT ALL THE TERMS AND PROVISIONS HEREOF SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF FLORIDA WITHOUT REGARD TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAW. IN THE EVENT THAT A JUDICIAL PROCEEDING IS NECESSARY, THE SOLE FORUM FOR RESOLVING DISPUTES ARISING OUT OF OR RELATING TO THIS AGREEMENT IS THE STATE AND FEDERAL COURTS SITTING IN BROWARD COUNTY AND THE PARTIES HEREBY IRREVOCABLY CONSENT TO THE JURISDICTION OF SUCH COURTS AND AGREE TO SAID VENUE.

4.4    In order to discourage frivolous claims the parties agree that unless a claimant in any proceeding arising out of this Agreement succeeds in establishing his claim and recovering a judgment against another party (regardless of whether such claimant succeeds against one of the other parties to the action), then the other party shall be entitled to recover from such claimant all of its/their reasonable legal costs and expenses relating to such proceeding and/or incurred in preparation therefor.

4.5    The holding of any provision of this Agreement to be invalid or unenforceable by a court of competent jurisdiction shall not affect any other provision of this Agreement, which shall remain in full force and effect. If any provision of this Agreement shall be declared by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced in whole or in part, such provision shall be interpreted so as to remain enforceable to the maximum extent permissible consistent with applicable law and the remaining conditions and provisions or portions thereof shall nevertheless remain in full force and effect and enforceable to the extent they are valid, legal and enforceable, and no provisions shall be deemed dependent upon any other covenant or provision unless so expressed herein.

4.6    It is agreed that a waiver by either party of a breach of any provision of this Agreement shall not operate, or be construed, as a waiver of any subsequent breach by that same party.

4.7    The parties agree to execute and deliver all such further documents, agreements and instruments and take such other and further action as may be necessary or appropriate to carry out the purposes and intent of this Agreement.

4.8    This Agreement may be executed in two or more counterparts each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

4.9    Nothing in this Agreement shall create or be deemed to create any rights in any person or entity not a party to this Agreement. \

## V.    CONFIDENTIAL INVESTOR QUESTIONNAIRE

5.1    The Purchaser represents and warrants that he, she or it comes within one category marked below, and that for any category marked, he, she or it has truthfully set forth, where applicable, the factual basis or reason the Purchaser comes within that category. ALL INFORMATION IN RESPONSE TO THIS SECTION WILL BE KEPT STRICTLY CONFIDENTIAL. The undersigned agrees to furnish any additional information which the Seller deems necessary in order to verify the answers set forth below.

Category A ____    The Purchaser is (a) an individual (not a partnership, corporation, etc.) whose individual net worth, or joint net worth with his or her spouse, presently exceeds $1,000,000, or (b) a self-directed retirement account ("Retirement Account") whose participant's net worth (or joint net worth with his or her spouse) presently exceeds $1,000,000.

In calculating net worth, (a) the Purchaser's or his or her spouse's primary residence shall not be included as an asset, (b) indebtedness that is secured by such person's primary residence, up to the estimated fair market value of the primary residence at the time of the sale of Preferred Stock, shall not be included as a liability (except that if the amount of such indebtedness outstanding at the time of the sale of the Preferred Stock exceeds the amount outstanding 60 days before such time, other than as a result of the acquisition of the primary residence, the amount of such excess shall be included as a liability), and (c) indebtedness that is secured by such person's primary residence in excess of the estimated fair market value of the primary residence at the time of the sale of the Preferred Stock shall be included as a liability.

Category B ____    The Purchaser is (a) an individual (not a partnership, corporation, etc.) who had an income in excess of $200,000 in each of the two most recent years, or joint income with his or her spouse in excess of $300,000 in each of those years (in each case including foreign income, tax exempt income and full amount of capital gains and losses but excluding any income of other family members and any unrealized capital appreciation) and has a reasonable expectation of reaching the same income level in the current year or (b) a Retirement Account and the Retirement Account participant meets the tests in clause (a).

6

Category C ____   The Purchaser is a director or executive officer of the Seller which is issuing and selling the Shares.

Category D ____   The Purchaser is a bank; a savings and loan association; insurance Seller; registered investment Seller; registered business development Seller; licensed small business investment Seller ("SBIC"); or employee benefit plan within the meaning of Title 1 of ERISA and (a) the investment decision is made by a plan fiduciary which is either a bank, savings and loan association, insurance Seller or registered investment advisor, or (b) the plan has total assets in excess of $5,000,000 or (c) is a self directed plan with investment decisions made solely by persons that are accredited investors. (describe entity)

_____

_____

Category E ____   The Purchaser is a private business development Seller as defined in section 202(a)(22) of the Investment Advisors Act of 1940. (describe entity)

_____

_____

Category F ☒   The Purchaser is either a corporation, partnership, Massachusetts business trust, or non-profit organization within the meaning of Section 501(c)(3) of the Internal Revenue Code, in each case not formed for the specific purpose of acquiring the Shares and with total assets in excess of $5,000,000. (describe entity)

_____

_____

Category G ____   The Purchaser is a trust with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Shares, where the purchase is directed by a "sophisticated investor" as defined in Regulation 506(b)(2)(ii) under the Act.

Category H ____   The Purchaser is a revocable trust and the grantor is an accredited investor pursuant to the following category: _____

Category I ____   The Purchaser is an entity (other than a trust) in which all of the equity owners are "accredited investors" within one or more of the above categories. If relying upon this Category alone, each equity owner must complete a separate copy of this Agreement. (describe entity)

_____

_____

7

Category J _____    The Purchaser is not within any of the categories above and is therefore not an accredited investor.

The Purchaser agrees that the undersigned will notify the Seller at any time on or prior to the closing in the event that the representations and warranties in this Agreement shall cease to be true, accurate and complete.

8

5.2    FINRA AFFILIATION.

Are you affiliated or associated with an FINRA member firm (please check one):

Yes _____          No __X__

If Yes, please describe:

_____

_____

_____

*If Purchaser is a Registered Representative with an FINRA member firm, have the following acknowledgment signed by the appropriate party:

The undersigned FINRA member firm acknowledges receipt of the notice required by Article 3, Sections 28(a) and (b) of the Rules of Fair Practice.

_____
Name of FINRA Member Firm

By: _____
        Authorized Officer

Date: _____

5.3    The Purchaser is informed of the significance to the Seller of the foregoing representations and answers contained in the Confidential Investor Questionnaire contained in this Article V and such answers have been provided under the assumption that the Seller will rely on them.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

9

PRINCIPAL AMOUNT = $_____

$23,750

Dated: November 7, 2014

_____
Signature

George Anaya, Jr.
Name Typed or Printed

President
Title (if Purchaser is an Entity)

Pioneer International Group, Inc., a Florida Corporation
Entity Name (if applicable)

6278 N Federal Hwy, Suite 438
Address

Fort Lauderdale, FL 33308
City, State and Zip Code

(800) 774-4915
Telephone

(800) 851-4796
Facsimile

georgeanaya@pioneer-international.com
E-Mail

46 - 3119256
Tax ID # or Social Security #

Name in which securities should be issued:

_____
Signature (if purchasing jointly)

_____
Name Typed or Printed

_____
Title (if Purchaser is an Entity)

_____
Entity Name (if applicable)

_____
Address

_____
City, State and Zip Code

_____
Telephone

_____
Facsimile

_____
E-Mail

_____
Tax ID # or Social Security #

10

Manner in which title is to be held: (check only one)

☐ Individual Ownership

*Joint Purchase:*
☐ Community Property
☐ Joint Tenant with Right of Survivorship (JTWRS)
☐ Tenants In Common (TIC)
☐ Tenants by Entirety (TBE)
*(If Securities are being purchased for as a joint purchase, both parties must sign.)*

*Entity*
☐ Partnership
☐ Seller
☐ Self-Directed Retirement Account
☐ Trust
☒ Other  *Corporation*
*(Entities must complete Cert. of Signatory – p. 12*

The Purchaser has set their hand on the date above.

*See page 12*
_____
PURCHASER

ACCEPTANCE OF AGREEMENT/ PRINCIPLE AMOUNT

This Stock Purchase Agreement is agreed to and accepted as of November 10, 2014.

WESTLUND FARMS, LLC

_____
Andrew Westlund, its President.

10

## CERTIFICATE OF SIGNATORY

(To be completed if the Preferred Stock
being purchased by an entity)

I, George Anaya, Jr., am the President of Pioneer International Group, Inc. (the "Entity").

I certify that I am empowered and duly authorized by the Entity to execute and carry out the terms of the Stock Purchase Agreement and to purchase and hold the Common Stock, and certify further that the Stock Purchase Agreement has been duly and validly executed on behalf of the Entity and constitutes a legal and binding obligation of the Entity.

IN WITNESS WHEREOF, I have set my hand this ____ day of November, 2014

(Signature)

12

# EXHIBIT D

# Justin E. Spiller, Esq.

PO BOX 260512, Miami, Florida 33126 - PH; 904.254.3989- Justin.Spiller@gmail.com

May 13, 2015

*Via E-Mail @ ACanteo@srff.com ; First Class Mail*

FOR SETTLEMENT PURPOSES ONLY
PRIVILEGED AND CONFIDENTIAL

Westlund Farms, LLC
ATTN: Andrea Cataneo, Partner
Sichenzia Ross Friedman Ference LLP
61 Broadway, 32nd Floor
New York, NY 10006

Re:   Pioneer International Group, Inc. purchase of Series C Preferred Shares of Cybergy
      Partners, Inc.  (f/k/a Cybergy Holdings, Inc.) (the "Shares") from Westlund Farms,
      LLC

Dear Mrs. Cataneo:

I have the privilege of representing Pioneer International Group, Inc. regarding the above-referenced transaction.  After approximately six (6) months after that certain Stock Purchase Agreement made between Pioneer International Group, Inc. ("Pioneer" or "Purchaser") and Westlund Farms, LLC ("Westlund" or "Seller") (the, "Agreement") was made, Pioneer has failed to receive the Shares as bargained and provided for in the Agreement.  This letter is sent for settlement purposes only.  Accordingly, it is requested that any communications regarding this matter be only through counsel.  Moreover, nothing herein shall be deemed an admission or admissible in any lawsuit or other proceeding.

On or around October 15, 2014, President of Pioneer, George Anaya, Jr. inquired with Mark Gray, then Chairman and CEO of then Civergy, Inc. regarding a potential merger of Civergy, Inc. and future opportunities for investment in Civergy, Inc. and/or the remaining entity after the merger.  Mr. Anaya had previously consulted with Civergy, Inc. and had provided Civergy, Inc. leads for investors with startup capital at the company's inception.  Shortly after the October 15, 2014 inquiry, Mr. Gray and Mr. Anaya communicated regarding a block of Series C Preferred Shares that were available from an initial investor that held a Convertible Note (the "Note").  The Note had the ability to convert into Series C Preferred Shares and then the shares were to be split at 10-1 into common stock of the remaining entity of the merger, which is now known to be Cybergy Partners, Inc.

Pioneer, at the direction of Mark Gray was given the opportunity to purchase the block of Shares at $1.00 per share. As documents were being drafted by counsel, Mr. Gray alerted Mr. Anaya that the purchase would no longer  be taking place with the Note holder, but the Note holder would be selling shares to a purchaser and then this purchase would sell to Pioneer. This purchaser was your client Westlund Farms, LLC. Ultimately, the Agreement was drafted and

ATTN: Mrs. Andrea Cataneo, Esq.
Sichenzia Ross Friedman Ference LLP
On behalf of Westlund Farms, LLC
May 13, 2015
Page 2

approved by all parties and executed on November 7, 2014. While there was a maximum about of shares that could be purchased per the Agreement, there was no minimum amount provided for in the Agreement. While multiple closings were contemplated in the Agreement, there was no maximum or minimum requirement put forth in the Agreement. Pioneer through its Escrow Agent, my office, provided the following amounts for the corresponding amount shares as shown below via wire to the account and attention of Seller Westlund Farms, LLC for purchase of the Shares from Westlund Farms, LLC:

1. November 12, 2014 - $23,750.00
2. November 19, 2014 - $22,500.00
3. December 30, 2014 - $98,725.00

For a total of amount of $144,975.00 @ $1.00 per share representing 144,975 Shares purchased.

Based upon our investigation, it is apparent that Westlund Farms, LLC has violated the terms of the Agreement and Pioneer has suffered significant damages, including but not limited to the monies provided for purchase of the Shares pursuant to the Agreement. Pioneer has been forced to sell previous shares of Preferred C Stock in order to satisfy purchase agreements between Pioneer and other buyers.

Accordingly, our client may file a lawsuit for the damages resulting from Westlund's default under the terms of the Agreement. However, at this point, Pioneer is willing to resolve this matter without the necessity of costly and protracted litigation. Pioneer request the return of the $144,975.00 previously forwarded to Westlund for purchase of Shares that as of this May 13, 2015 have not been delivered. If you are interested in resolving this matter short of litigation, please contact me immediately to make arrangements to return the funds for which your client has been unjustly enriched. If I have not heard from you by close of business Friday, May 15, 2015, I will assume that you have no interest in resolving this matter without the need for litigation and will take all necessary steps to protect our client's rights under the law.

Should you have any questions or concerns regarding this matter, please do not hesitate to contact me. This letter is sent without prejudice to all rights and claims of Pioneer International Group, Inc. and should not be construed as a waiver or modification of the same.

Very truly yours,

Justin E. Spiller

cc:   Mr. George Anaya, Jr., President, Pioneer International Group, Inc.

2

# EXHIBIT E

# FMS LAWYER, PL

FRANK SMITH
RUTH SMITH

9900 Stirling Road
Suite 226
Cooper City, Florida 33024

Frank Smith, Esq.
954-985-1400 (phone)
954-241-6947 (facsimile)
frank.smith@fmslawyer.com
www.fmslawyer.com

June 22, 2015

**Email, Certified Mail/RRR and Regular Mail**

Andrew Westlund
41154 Ridge Drive
Scio, OR 97374
awestlund@organicgrown.com
awestll@aol.com

Mark Gray
3110 Mount Vernon Avenue
Alexandria, VA 22305
markegray@msn.com
mgray@cybergypartners.com

Westlund Farms, LLC
41154 Ridge Drive
Scio, OR 97374

Cybergy Holdings, Inc.
10333 E. Dry Creek Rd., Suite 200
Englewood, CO 80112

Re:    Pioneer International, Inc. and George Anaya, Jr.

Please be advised that this office has the pleasure of representing Pioneer International, Inc. and George Anaya, Jr., individually (Collectively, "Pioneer"). Note that this letter is directed to Westlund Farms, LLC, Andrew Westlund, individually, Cybergy Holdings, Inc. and Mark Gray, individually (collectively, hereinafter all known as "You"). As You are aware, on November 7, 2014 Pioneer entered into an agreement with Westlund Farms, LLC (represented by Andrew Westlund) for the sale of securities, which securities are shares in Cybergy Partners, Inc. The transaction was orchestrated by Mark Gray (who was then the CEO of Civergy, Inc.) who represented that upon the payment to Westlund by Pioneer, Pioneer would receive Series C Preferred Shares of the company now known as Cybergy Partners, Inc. (the "Shares"). Note that although Pioneer made the payment, it is unsure of the ultimate disposition of the funds and accordingly, holds all parties jointly and severally responsible.

You were paid the sum of One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00) based upon Your representations. Unfortunately, it now appears that Your representations and ability to deliver the Shares, were completely without veracity, and in sum and substance, fraud. Despite our client's good faith effort to attempt to resolve this matter, You have elected to ignore Pioneer's demands. As such, Your failure to return the funds to Pioneer amount to civil theft, conversion and fraud.

Our information has revealed that You did knowingly misappropriate the above-noted sum to Your own use (or to the use of another who is not entitled thereto) in an amount of One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00), and have deprived Pioneer of the right to its property and the benefits therefrom. Pursuant to Fla. Stat. §772.11, written demand is hereby

made upon You for the sum of three (3) times the amount of One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00), a total of Four Hundred Thirty-Four Thousand Nine Hundred Twenty-Five ($434,925.00), to be paid to Pioneer, c/o the undersigned within thirty (30) days after receipt of this demand. You are hereby advised that in the event You fail to comply with this demand, You may be responsible for attorneys' fees and costs incurred by Pioneer in the bringing of any action under Fla. Stat. §772.11.

As a matter of courtesy, You are referred to Fla. Stat. §812.014 for the definition of theft under which Your liability arose. As is well settled under Florida Law, Your actions are both "conversion" and "theft." Despite the demand of Pioneer, You have failed to return the property of Pioneer as more particularly set forth above. It is abundantly clear from the facts that You obtained or used the One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00) belonging to Pioneer with the intent to permanently deprive Pioneer of the right to the property or benefit of the property. At the time of Your actions, You knew or should have known that You were not entitled to the use or possession of the property.

If You choose not to respond and satisfy this thirty (30) day demand for payment of Four Hundred Thirty-Four Thousand Nine Hundred Twenty-Five ($434,925.00), our client will have no choice but to seek redress in the courts of the State of Florida, which may include, but is not limited to, an action for treble damages, attorneys' fees and costs under Fla. Stat. §772.11.

In addition to the claim as set forth above, Your action are tantamount to securities fraud under the Florida Statutes. It is unlawful to engage in any transaction involving a "security," where a misrepresentation is involved; you are respectfully referred to Fla. Stat. §517.301. Pursuant to Fla. Stat. §517.211, Pioneer is entitled to damages of at least One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00) as the consideration paid for the security, plus interest thereon at the legal rate, plus attorneys' fees and costs.

In order to satisfy the statutory demand for civil theft, please pay Four Hundred Thirty-Four Thousand Nine Hundred Twenty-Five ($434,925.00) and make the check payable to FMS Lawyer, Trust Account and ensure it is delivered to our office within the thirty (30) day period, but in no event later than July 31, 2015.

Notwithstanding the claim for civil theft, which will not be collectible until after the notice period, in the event that you do not pay at least One Hundred Forty-Four Thousand Nine Hundred Seventy-Five Dollars ($144,975.00) and make the check payable to FMS Lawyer, Trust Account and ensure it is delivered to our office no event later than June 30, 2015, (and reach a settlement on all the other ancillary issues) we will be filing a lawsuit against You seeking any and all damages available to Pioneer under applicable law.

Very truly yours,

FMS Lawyer PL

By: _____
       Frank Smith